SIXTH DIVISION

March 19, 2004
 

No. 1-02-3741

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

) 

)

ANTHONY BOYD, ) 

) Honorable

Defendant-Appellant. ) Colleen McSweeney-Moore,

) Judge Presiding.

PRESIDING JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant, Anthony Boyd, was convicted of first-degree knowing murder (720 ILCS 5/9-1(a)(2) (West 1998)), aggravated battery (720 ILCS 5/12-4(b)(1) (West 1998)), and felony murder predicated on the aggravated battery offense (720 ILCS 5/9-1(a)(3) (West 1998)).  During sentencing, the judge referenced the one-act, one-crime rule and merged the felony murder conviction into the first-degree murder conviction.  The order of commitment and sentence to the Illinois Department of Corrections signed by the judge accurately reflected the sentence imposed as 45 years on first-degree knowing murder (720 ILCS 5/9-1(a)(2) (West 1998)) concurrent with 5 years on aggravated battery (720 ILCS 5/12-4(b)(1) (West 1998)).

On direct appeal defendant raised one issue only, whether his trial counsel was ineffective for eliciting testimony from him that he had struck one of the victims with a gun, which according to defendant, ensured his conviction for felony murder.  We affirmed on direct appeal.  
People v. Boyd
, No. 1-00-0491 (2002) (unpublished order under Supreme Court Rule 23).  Defendant filed a post-conviction petition which was dismissed at the first stage of the post-conviction process.  Defendant now appeals the trial court’s first-stage dismissal of his post-conviction petition.

BACKGROUND

Around 6:30 p.m. on February 5, 1998, Marcus Bolden and a friend, Jermaine Muse, went to visit the apartment of Steve Robinson at 7410 South Chappel Avenue in Chicago to buy cocaine.  Bolden initially remained in the car.  Besides Robinson, also present in the apartment were defendant, Kenji Hawthorne, and Vernon Watts.  While in Robinson’s apartment, Robinson asked Hawthorne for two bags of cocaine.  Hawthorne gave two small bags of crack cocaine to Robinson.  Robinson and Muse then went outside to the car to talk to Bolden.  While Robinson and Muse were outside, defendant asked for and received a gun from Hawthorne.  Robinson and Muse, together with Bolden, eventually returned to the apartment.  At that point, defendant, Hawthorne, and Vernon Watts were in the front room of the apartment.  Robinson told Hawthorne that Bolden wanted to test the cocaine.

As Bolden paid Hawthorne and began to smoke the cocaine, defendant asked Muse why he had his hands in his pockets.  Defendant instructed Muse to remove his hands from his clothing.  Defendant, with Hawthorne and Watts, went into a front bedroom, while Muse, Bolden and Robinson stayed in the kitchen.  Muse suggested to Bolden that they leave because defendant was making Muse nervous.  When Bolden indicated he wanted to stay, Muse left the kitchen and attempted to leave the apartment.  However, as Muse approached the front door, he was stopped by Hawthorne.  Defendant also appeared, displayed the gun and stated that nobody was leaving the apartment.

Defendant pointed the gun at Muse and instructed Muse to get on the floor.  Defendant suddenly struck Muse several times in the head with the gun and asked Muse if he was a police officer.  Muse stated no and attempted to explain to defendant that he worked at Ford Motor Company.  As defendant confronted Muse, Hawthorne grabbed and searched Bolden.  Robinson, who, like Muse, was on his knees, repeatedly told defendant that neither Muse nor Bolden was a police officer.  Defendant told Robinson to be quiet and threatened to shoot Robinson.  When Robinson continued telling defendant that his friends were not the police, defendant told Robinson “to get the fuck out” and Robinson ran to the kitchen.  Muse escaped by jumping through a closed front-room window, shattering the glass, and began searching for help.

During the commotion caused by Muse escaping, Bolden attempted to grab the gun from defendant and a struggle ensued.  Hawthorne testified that Bolden grabbed defendant around the waist in a bearhug, while defendant, holding the gun in his hands, attempted to break free.  During the struggle, the gun was fired and Bolden fell to the floor.  According to Hawthorne, defendant had the gun in his hands the entire time and he never observed defendant pick the gun up off the floor.

Defendant searched Bolden while Bolden was on the floor and pulled some unidentified items from Bolden’s pants pocket.  Defendant, together with Hawthorne and Watts, then fled from the apartment.  Bolden was transported to Cook County Hospital, where he later died of a gunshot wound to the chest.  Several days later defendant was arrested and placed in a lineup.  The lineup was viewed separately by Muse, Robinson and Hawthorne, each of whom positively identified defendant as being present at Robinson’s apartment with the gun on the night of the shooting.

After the State rested, the defendant testified.  Defendant stated that he went to Robinson’s apartment on the night of the shooting to meet Hawthorne, who had asked defendant to obtain a gun for him.  Upon his arrival, defendant gave Hawthorne a gun and the two went to a restaurant to eat.  They eventually returned to Robinson’s apartment, and because Hawthorne was “playing” with the gun, defendant took the gun away from Hawthorne.

Defendant testified that Robinson asked Hawthorne for some cocaine.  Hawthorne gave Robinson two bags of cocaine and Robinson went outside.  Robinson returned shortly with Muse and Bolden and everyone gathered in the kitchen.  After some hesitation, Bolden agreed to purchase the cocaine and gave Hawthorne money.  Defendant, Hawthorne and Watts then went into a room in the front of the apartment.  Defendant noticed Muse attempting to open the front door.  Hawthorne asked Muse where he was going and Muse stated he was going outside to get a beer.  Hawthorne, according to defendant, responded by suggesting that Muse was a police officer.  Defendant agreed with Hawthorne and Hawthorne grabbed Muse, pushing him away from the door and back into the apartment.  Defendant indicated that he assisted Hawthorne, during which time Muse “kind of like pulled the gun out” of defendant’s clothing.  Defendant then told Muse to get on the floor.

Defendant grabbed hold of the gun while Bolden and Robinson entered the room.  According to defendant, Hawthorne began to tussle with Bolden.  Defendant stood next to Muse, who was on his knees, and told Bolden to let go of Hawthorne.  During his direct examination, defense counsel specifically asked defendant if he ever hit Muse with the gun while Muse was on his knees.  Defendant acknowledged that he did hit Muse with the gun.  Defendant indicated that while he and Robinson talked about whether Muse and Bolden were police officers, Muse got up and jumped out of a window.  Defendant stated that Bolden then suddenly rushed him and grabbed the gun’s handle.  Defendant explained his finger was on the trigger and the gun’s barrel was pointed in the direction of Bolden.  Defendant and Bolden began to struggle, during which the gun fired and dropped to the floor.  Defendant stated that both he and Bolden were holding onto the gun during their altercation and that they released their respective hold of the gun after its discharge.  When defendant realized that Bolden, not he, had been shot, defendant walked over to where Bolden was lying and picked up the gun.  Defendant fled the apartment and  threw the gun in a nearby alley.

Following the shooting, defendant knew that Bolden had died and that the police were searching for him.  Defendant, however, never contacted the police to explain his involvement in the  shooting.  Defendant maintained the shooting was an accident and that he had no intention to shoot or kill Bolden.

The trial judge found the defendant not guilty of the attempted robbery charge, but found defendant guilty of first-degree murder, aggravated battery and felony murder predicated on the offense of aggravated battery.  The court sentenced defendant to 45 years in prison on the first-degree murder conviction and a concurrent term of 5 years in prison for the aggravated battery conviction.  On direct appeal, defendant argued one issue: whether his trial counsel was ineffective for eliciting testimony from him that he had struck Muse with a gun, which, defendant contended, ensured his conviction for felony murder. 
 People v. Boyd
, No. 1-00-0491 (2002) (unpublished order under Supreme Court Rule 23).  Defendant contended because the shooting of Bolden occurred shortly after defendant struck Muse several times in the head with a handgun without the intervention of any independent act, defense counsel’s eliciting the admission from defendant that he committed an aggravated battery upon Muse guaranteed a finding of guilty on the greater charge of felony murder.

In resolving that argument raised by defendant on direct appeal, we indicated in pertinent part as follows:

“Even assuming defense counsel’s concession of defendant’s guilt for aggravated battery constitutes incompetence, we do not believe a reasonable probability exists that the trial court would have found defendant not guilty of felony murder based on the aggravated battery if defendant had not been questioned about his assault on Muse.  The crux of defendant’s ineffective assistance claim is that his attorney’s concession of guilt on the aggravated battery charge lead the court to enter a conviction for felony murder based on that offense.  The State’s evidence, however, overwhelmingly established defendant’s guilt for aggravated battery.  Most notably, Muse, one of the victims, and Robinson and Hawthorne, both eye witnesses, all testified that defendant struck Muse in the head with the handgun several times.  Given the strength of the State’s evidence introduced in support of its aggravated battery charge, we cannot conclude defendant would have been acquitted of felony murder if he had not testified to striking Muse with a gun.” 
 Boyd
, slip op. at 15.

Defendant filed a
 pro se
 post-conviction petition.  The petition alleged various constitutional deprivations based on the alleged ineffective assistance provided by trial and appellate counsel.  We will address each in turn, but first we briefly discuss as backdrop the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1
 et seq
. (West 2000)).

POST-CONVICTION HEARING ACT

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 
et seq
.
 
(West 2000)) provides a mechanism by which criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution and the Illinois Constitution. 
People v. Mahaffey
, 194 Ill. 2d 154, 170 (2000).  A post-conviction petition is a collateral attack on a prior conviction. 
 Mahaffey
, 194 Ill. 2d at 170.  

In a noncapital case, the Act creates a three-stage procedure for post-conviction relief.  
 People v. Boclair
, 202 Ill. 2d 89, 99 (2002).  At stage one, the trial court, without input from the State, examines the petition to determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2000).  If the petition is not dismissed at stage one, it proceeds to stage two, where section 122-4 of the Act provides for the appointment of counsel for an indigent defendant.  725 ILCS 5/122-4 (West 2000).  At stage two the State has the opportunity to either answer or move to dismiss the petition (725 ILCS 5/122-5 (West 2000)), and the trial court determines whether the petition makes a substantial showing of a constitutional violation (
People v. Coleman
, 183 Ill. 2d 366, 381 (1998)).  If the petition is not dismissed at stage two, it proceeds to stage three, where the trial court conducts an evidentiary hearing.  725 ILCS 5/122-6 (West 2000).  An evidentiary hearing on the petition is required when the allegations of the petition, supported by the trial record and the accompanying affidavits, demonstrate a substantial violation of a constitutional right.  
People v. Mitchell
, 189 Ill. 2d 312, 322 (2000).

The instant case presents a
 pro se
 petition dismissed at the first stage of the post-conviction process.  The standard of review of either first-stage or second-stage dismissal is
 de novo
.
 
 
Coleman
, 183 Ill. 2d at 389.  At the first stage, the trial court must determine whether the petition is frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (West 2000).  “A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the ‘gist of a constitutional claim.’ ”
  People v. Edwards
, 197 Ill. 2d 239, 244 (2001), quoting
 People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).

In the instant case, defendant’s allegations involve claims of ineffective assistance of trial and appellate counsel.  Such claims are resolved by application of the 
Strickland
 standard.  
 Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  Claims of ineffective assistance of appellate counsel are measured against the same standard as claims of ineffective assistance of trial counsel. 
 People v. Caballero
, 126 Ill. 2d 248, 269-70 (1989).  A defendant must demonstrate both a deficiency in counsel’s performance and prejudice resulting from the deficiency.  
People v. Edwards
, 195 Ill. 2d 142, 162 (2001), citing
 Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  To demonstrate performance deficiency, a defendant must establish that counsel’s performance was below an objective standard of reasonableness.  
Edwards
,
 
195 Ill. 2d at 163.  Prejudice is demonstrated if there is a reasonable probability that, but for counsel’s deficient performance, the result of the proceeding would have been different. 
 Strickland
,
 
466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel’s decision prejudiced defendant.  
People v. Enis
, 194 Ill. 2d 361, 377 (2000).  Keeping these principles in mind, we next address defendant’s various allegations of ineffective assistance of trial and appellate counsel. 

FAILURE TO ARGUE FOR SECOND-DEGREE MURDER CONVICTION WAS NOT 

INEFFECTIVE ASSISTANCE OF  TRIAL AND APPELLATE COUNSEL 

Defendant, in his post-conviction petition, alleged that trial and appellate counsel provided ineffective assistance of counsel for failure to argue that the court should have found him guilty of second-degree, rather than first-degree, murder.  Regarding that issue the 
pro se 
petition alleged in pertinent part as follows:

“a. The first degree murder charges against him were excessive.  ***  Because petitioner’s trial counsel failed to argue that the court should find him guilty of second degree murder instead of first degree murder, and because petitioner’s appellate attorney did not raise this issue on direct appeal, petitioner was deprived of his right to the effective assistance of counsel that he is guaranteed under the Sixth and Fourteenth Amendments to the Constitution.  While an issue which could have been presented on direct appeal, but was not, is deemed waived for post-conviction proceedings, the Illinois Supreme [C]ourt has held that ‘the doctrine of waiver ought not to bar issues from consideration where the alleged waiver stems from incompetency of appointed counsel on appeal.’ ”

As previously noted, in order to establish ineffective assistance of counsel, defendant must satisfy both prongs of the two-part
 Strickland
 test.  The defendant must demonstrate that his attorney’s performance was deficient in that “ ‘counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment.’ ” 
 Coleman
,
 
183 Ill. 2d at 397, quoting
 Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 194 S. Ct. at 2063.  Under the second prong, the prejudice component of the
 Strickland
 test, defendant must show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 
 Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  “Courts, however, may resolve ineffectiveness claims under the two-part 
Strickland
 test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel’s performance.”  
Coleman
, 183 Ill. 2d at 397-98.  

In the instant case, defendant failed to show prejudice by demonstrating that had his trial or appellate counsel argued that he was guilty of second-degree murder, the trial court would have found him not guilty of first-degree murder, or the appellate court would have reversed defendant’s first-degree murder conviction.  The record rebuts defendant’s allegation that he was deprived of the effective assistance of trial and appellate counsel.  There is more than ample evidence in the record to establish defendant was proven guilty beyond a reasonable doubt of murder.  The record does not reflect the result at trial or on appeal would have been different had either trial or appellate counsel argued in favor of a second-degree murder conviction.

We note the experienced trial judge, consistent with the provisions of the Post-Conviction Hearing Act for the first stage of the post-conviction proceeding, substantively addressed this argument in her extensively researched and factually detailed written order dismissing defendant’s petition.  In her order, recalling evidence from the trial she had presided over, the trial judge noted in relevant part as follows:

“It is quite clear from the record that the trier of fact, the trial judge in this case, did not find petitioner’s testimony credible. ***  Petitioner contends evidence of mitigating factors was presented, and while that is true, it is up to the trier of fact to determine what weight to give that evidence.  [
People v.
] 
Emerson
, 189 Ill. 2d [436,] 474-75 [(2000)].  The trial court characterized the incident as ‘a drug transaction that goes bad,’ but did not find mitigating factors reducing the crime to second-degree murder. ***  In fact, the court expressly noted at the time of the shooting, the victim dove out a glass window in an effort to save himself.”  

Applying a
 de novo
 standard of review, as we are required to do when resolving an appeal of a petition dismissed at the first stage of the post-conviction process (
Coleman
,
 
183 Ill. 2d at 389), we find the record positively rebuts the defendant’s allegation that he suffered a constitutional deprivation as the result of ineffective assistance of trial and appellate counsel in the context of both trial and appellate counsel failing to argue for a second-degree murder conviction.  Even had such an argument been raised at the trial or appellate level, the evidence was more than sufficient to support defendant’s first-degree murder conviction.  Applying the
 Strickland
 test, we cannot say that either trial or appellate counsel was objectively unreasonable by failing to argue for a second-degree murder conviction.  The record reflects that such an argument would not have changed the results of the proceeding at trial or on direct appeal.  
People v. Barrow
, 195 Ill. 2d 506, 523 (2001).  The record positively rebuts any reasonable probability that had either trial or appellate counsel argued in favor of a second degree murder conviction, the results of the proceeding would have been different.  The defendant suffered no constitutional deprivation as the result of the performance of trial and appellate counsel. 

The record fails to satisfy the prejudice component under 
Strickland
.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  We are mindful that the prejudice component of
 Strickland
 entails more than an “outcome-determinative test.”  The defendant must show that deficient performance of counsel rendered the result of the trial unreliable or the proceeding fundamentally unfair. 
 People v. Richardson
, 189 Ill. 2d 401, 411 (2000).  In the instant case, the result of the trial and the result of the direct appeal was neither unreliable, nor fundamentally unfair.

APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING 

TO ARGUE THE STATE FAILED TO PROVE DEFENDANT 

GUILTY BEYOND A REASONABLE DOUBT

Regarding ineffective assistance of appellate counsel, the
 pro se
 petition alleged in pertinent part as follows:

“b. The State failed to prove petitioner guilty beyond a reasonable doubt because it failed to prove that he had the intent to shoot Marcus Bolden.  ***  [B]ecause even the State’s witness said that Bolden lunged towards petitioner and that the gun went off during their subsequent struggle, the State did not prove beyond a reasonable doubt that petitioner had the intent or knowledge necessary to support a conviction for first degree murder.  Because appellate counsel failed to raise this issue on direct appeal, petitioner was deprived of his constitutional right to the effective assistance of counsel.”

We note the defendant was found guilty of first-degree knowing murder (720 ILCS 5/9-1(a)(2) (West 1998)) in that he, without lawful justification, shot and killed Marcus Bolden “with a gun knowing that such shooting with a gun created a strong probability of death or great bodily harm to Marcus Bolden, in violation of 720 ILCS 5/9-1(a)(2) (West 1998).”  The State was not required to prove as alleged by the defendant that the defendant intended to kill Marcus Bolden; rather, as previously noted, defendant was charged with knowing that shooting with a gun created a strong probability of death or great bodily harm to Marcus Bolden.  The trial judge substantively addressed this argument in her written order dismissing the petition.  The record rebuts defendant’s allegation that the State did not prove beyond a reasonable doubt that petitioner was guilty of first-degree knowing murder.  The record positively rebuts any reasonable probability that had appellate counsel raised this issue the results of the proceeding would have been different.  The defendant suffered no constitutional deprivation as the result of appellate counsel’s performance in this regard.  The record fails to satisfy the prejudice component under 
Strickland
.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct at 2068. 

TRIAL AND APPELLATE COUNSEL WERE NOT INEFFECTIVE FOR FAILURE 

TO ARGUE THE SENTENCE IMPOSED WAS EXCESSIVE

Defendant contends the sentence imposed was excessive and regarding that issue the 
pro se 
petition in pertinent part alleges as follows:

“c. In light of the petitioner’s limited criminal background, his young age, and the circumstances of this case, petitioner’s sentence of 45 years for first degree murder was excessive.  Before his arrest in connection with this case petitioner only had one prior juvenile adjudication and one prior adult conviction – both of which were for non-violent offenses and which both resulted in sentences of probation.  ***  Because petitioner’s trial lawyer did not challenge his sentence with a motion to reconsider, and because his appellate lawyer did not raise this issue on direct appeal, petitioner was deprived of his constitutional right to the effective assistance of counsel.”

The alleged excessiveness of a sentence that is within the statutory limits when imposed does not create a constitutional issue that may serve as a basis for post-conviction relief. 
 People v. Hoffman
, 25 Ill. App. 3d 261, 271 (1974).

As noted by the trial court in resolving this issue:

“In Illinois, the sentencing range in 1999 for first-degree murder was 20 to 60 years, except when circumstances were such that natural life or death was appropriate.  730 ILCS 5/5-8(1) (West 1999).  Petitioner’s sentence of 45 years clearly falls within the statutorily authorized limits; therefore, petitioner has failed to raise a cognizable claim under the Act.”  

We agree with the trial judge.  Although defendant’s prior criminal background is limited, nothing in the record indicates that a sentence of 45 years, which is mid-level in the context of the sentencing range, is excessive in light of the seriousness of the offense.

Regarding the allegations of ineffective assistance of trial counsel as to the sentencing issue, the record directly rebuts defendant’s claim.  Trial counsel did seek a reduction of sentence which was denied.  Moreover, even had appellate counsel raised an argument alleging an excessive sentence, for the reasons previously discussed that argument would not have changed the results of the appeal.  The record positively rebuts defendant’s allegation that trial and appellate counsel were ineffective for failing to argue that his sentence was excessive.  The defendant suffered no constitutional deprivation as the result of the performance of trial and appellate counsel.  The record fails to satisfy the prejudice component under 
Strickland
. 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct at 2068.  

ALLEGATIONS RAISED FOR THE FIRST TIME ON APPEAL NOT 

RAISED IN POST-CONVICTION PETITION

As we find is too frequently the case in appealing a trial judge’s dismissal of a first-stage
 pro se
 petition, appellate counsel has presented in the brief various allegations not raised in the
 pro se
 petition.  In the instant case, rather than pursuing the 
pro se 
petitioner’s allegation of constitutional deprivation as the result of ineffective assistance of trial and appellate counsel because trial and appellate counsel failed to argue for a second-degree murder conviction, failed to challenge evidence sufficiency regarding intent and failed to challenge the sentence, post-conviction appellate counsel raises new allegations.  We will address each in turn. 

The Act does not provide for representation at the first stage of the post-conviction process, as a result, frequently resolution by the appellate court of petitions dismissed at the first stage and challenged on appeal presents us with a moving target as to defendant’s allegations of constitutional deprivations.  See 
People v. Porter
, 122 Ill. 2d 64, 75-76 (1988) (neither fundamental fairness nor due process considerations require that counsel be appointed for post-conviction petitioners at the initial pleading stage).  On a regular and consistent basis the inarticulate allegations of constitutional deprivation presented by a
 pro se
 petitioner to the trial court take on a completely different meaning in both form and substance once appellate litigators become involved during the appeal of
 pro se 
petitions dismissed at the first stage.  We 
note, in the instant case,
 the experienced circuit court judge painstakingly addressed each and every allegation presented in the 
pro se 
petition on its merits.  However, the circuit court judge was never given the opportunity to address the new allegations raised by counsel on appeal of the post-conviction dismissal.  Such a procedure frustrates the very purpose of first-stage review as articulated by section 122-2.1(a)(2), which provides the mechanism by which the circuit court judge is to determine whether the petition substantively is frivolous or patently without merit because the record rebuts the alleged constitutional deprivation.  725 ILCS 5/122-2.1(a)(2) (West 2000).

Section 122-3 of the Act requires that post-conviction claims be included in “the original or an amended petition.”  725 ILCS 5/122-3 (West 2000).  The Act specifically delineates the consequences of omitting an issue: “[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.”  725 ILCS 5/122-3 (West 2000).  “A post-conviction petitioner may not wait until appeal to formulate the matters that he wishes to assert as grounds for post-conviction relief.”  
People v. McNeal
, 194 Ill. 2d 135, 153 (2000);
 People v. Moore
, 189 Ill. 2d 521, 544 (2000); see also
 People v. Sutherland
, No. 1-01-3770, slip op. at 11 (January 30, 2004); 
People v. Jones
, No. 95576, slip op. at 5-6 (March 18, 2004).  Where, as here, petitioner fails to raise an issue in his 
pro se
 petition for post-conviction relief but, rather, raises an issue for the first time on appeal of the dismissal of the post-conviction petition, the issue is waived.  725 ILCS 5/122-3 (West 2000).

Our application of the principle of waiver to allegations of constitutional deprivation raised for the first time on appeal is in no way inconsistent with the position previously taken by this court in
 People v. Etherly
, 344 Ill. App. 3d 599, 622-23 (2003).  In
 Etherly,
 the circuit court
 sua sponte
 dismissed a first-stage 
pro se
 petition based on waiver.  We held that the circuit court cannot dismiss a petition at the first stage of the post-conviction process on the basis of waiver, because, like timeliness, waiver is a procedural bar to the defendant’s right to present a claim, not a consideration of the petition’s substantive merits, which is properly raised by the State at the second stage of the post-conviction process. 
 Etherly
,
 
344 Ill. App. 3d at 622-23.  Unlike 
Etherly
, in the instant case, the circuit court judge did not dismiss the
 pro se
 petition based on waiver or any other procedural bar but, rather, addressed each and every allegation in the petition substantively on its merits.  Unlike
 Etherly
, in the instant case, we are presented with new allegations raised for the first time 
on appeal
 of the dismissal of the post-conviction petition. 

In application of waiver to the new arguments raised by defendant on appeal of the dismissal of his first-stage petition, we are mindful of the principles of fundamental fairness.  It has long been recognized that in appropriate cases, we may resolve issues not withstanding their waiver.  This general rule was recently discussed by the Illinois Supreme Court in 
People v. De La Paz
, 204 Ill. 2d 426, 431 (2003):

“ ‘[T]he general rule is that where a question is not raised or
 
reserved in the trial court, or where, though raised in the lower court, it is not urged or argued on appeal, it will not be considered
 
and will be deemed to have been waived.  However, this is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process.  “The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.” ’  [Citations.]” 
 
De La Paz
, 204 Ill. 2d at 431.

As further noted in 
De La Paz
, it has long been recognized that under appropriate circumstances issues may be resolved, notwithstanding their waiver:

“this court has ‘the responsibility *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system.’ ”
  De La Paz
, 204 Ill. 2d at 432-33, quoting
 Hux v. Raben
, 38 Ill. 2d 223, 225 (1967).    

Pro se
 litigants operate at a disadvantage when it comes to identifying issues and articulating allegations of constitutional deprivations under the terms of the Act; however, a post-conviction petitioner is not without recourse for failing to include issues in the petition.  See 
People v. Jones
, No. 95576, slip op. at 6 (March 18, 2004).  We are mindful of the principle recently recognized by the Illinois Supreme Court in
 Jones
.  “A defendant who fails to include an issue in his original or amended postconviction petition, although precluded from raising the issue on appeal from the petition’s dismissal, may raise the issue in a successive petition if he can meet the strictures of the ‘cause and prejudice test.’  [Citations.]”
  Jones
, slip op. at 6.  The defendant must demonstrate “cause” for failing to raise the error and “prejudice” resulting from the error defendant failed to raise.  
Jones
, slip op. at 6.  “ ‘[T]he cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in a successive petition may be considered on its merits.’ ”
  Jones
, slip op. at 6, quoting
 People v. Pitsonbarger
, 205 Ill. 2d 444, 459 (2002).  

In the instant case, rather than remand for defendant to raise these issues in a successive petition, in the interest of judicial economy and because these issues have been fully briefed, we substantively address the new issues raised for the first time on post-conviction appeal.  Post-conviction appellate counsel argues that the trial court erred in dismissing the first-stage petition because petitioner’s original appellate counsel “was ineffective for not raising in his direct appeal that he was not proven guilty beyond a reasonable doubt of first degree murder under section 9-1(a)(2) or of felony murder.”  In support of that argument, post-conviction appellate counsel contends that the record reflects defendant’s gun fired accidentally “following petitioner’s reckless conduct of pointing a gun at the victim, which was conduct that supported a conviction for only involuntary manslaughter.” 

The constitutional deprivation argued by post-conviction appellate counsel is that because the evidence was allegedly insufficient to prove defendant guilty of first-degree murder, and at most supported a conviction for involuntary manslaughter, appellate counsel was ineffective for failing to raise the issue of evidence sufficiency.  While the requirement of proof of guilt beyond a reasonable doubt is a matter of constitutional right, it has been repeated many times that it is not the purpose of the Post-Conviction Hearing Act to redetermine guilt or innocence. 
 People v. Rogers
, 197 Ill. 2d 216, 221 (2001).

Moreover, the record in the instant case substantively rebuts the merits of defendant’s new allegations raised for the first time on post-conviction appeal that appellate counsel was ineffective for not arguing that defendant was not proven guilty beyond a reasonable doubt of knowing first-degree murder under section 9-1(a)(2) or felony murder.  Based on our review of the record, we find that the evidence of defendant’s guilt is such that there is no reasonable probability that the outcome of the direct appeal would have been any different had appellate counsel challenged the sufficiency of the evidence to prove defendant guilty beyond a reasonable doubt of knowing first-degree murder or felony murder.  The record rebuts defendant’s argument, raised for the first time on post-conviction appeal, that at most the evidence supported a conviction for involuntary manslaughter, rather than first-degree murder.  An argument in favor of involuntary manslaughter would not have been successful on direct appeal.  Defendant suffered no prejudice from appellate counsel’s failure to make such an argument and, therefore, the record fails to satisfy the prejudice component under 
Strickland
.  
Strickland
, 466 U.S. at 94, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In addition to alleging ineffective assistance of appellate counsel for failure to argue the evidence at most supported a conviction for involuntary manslaughter, defense counsel, on post-conviction appeal, for the first time challenges the felony murder conviction.  Defense counsel on post-conviction appeal contends the felony murder conviction was “unsupported by the evidence because the commission of the predicate felony of aggravated battery was completed before the separate incident in which the victim was shot.”  Defense counsel on post-conviction appeal argues that counsel on direct appeal was ineffective for not challenging the felony murder conviction.  

However, the record substantively rebuts the allegation that counsel on direct appeal was ineffective for failing to challenge the felony murder conviction.  Regarding the felony murder conviction, the law in Illinois recognizes only one offense of murder. 
 People v. Toney
, 337 Ill. App. 3d 122, 129 (2003).  In the instant case, defendant’s conviction for felony murder merged with his conviction for first-degree knowing murder (720 ILCS 5/9-1(a)(2) (West 1998)) and he was sentenced to 45 years on the knowing murder conviction.  The record reflects a continuing course of conduct during which the defendant committed an aggravated battery on Muse and killed Bolden.  The judge in merging the felony murder conviction with the conviction for knowing murder referenced the one-act, one-crime rule and sentenced defendant to 45 years for the crime of first-degree knowing murder under section 9-1(a)(2) (720 ILCS 5/9-1(a)(2) (West 1998)).  

Defendant received no additional sentence for the felony murder conviction; rather the judge correctly imposed a sentence consistent with the fact that the law in Illinois recognizes only one offense of first-degree murder.  Defendant was sentenced to 45 years in prison for first-degree knowing murder, and no sentence was imposed on the felony murder conviction based on the judge’s correct application of the law.  For the reasons previously discussed, there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of first-degree murder, and even if any error occurred regarding the felony murder conviction it was harmless and in no way prejudiced defendant.  The record 
substantively rebuts the allegation that counsel on direct appeal was ineffective for failing to challenge the felony murder conviction.

We further reject defendant’s argument that his appellate counsel was ineffective for failing to challenge the felony murder conviction on direct appeal because the predicate felony of aggravated battery was completed before the victim was shot and killed.  Defendant committed an aggravated battery on Muse, Muse escaped and during the commotion caused by Muse escaping, Bolden attempted to grab the gun from defendant and was shot and killed by the defendant.  As previously discussed, the record reflects the defendant put into play a course of felonious conduct which ended with Bolden being shot and killed by defendant.  The evidence was sufficient to prove defendant guilty beyond a reasonable doubt of felony murder.  Based on the record, we determine that the underlying issue regarding the completion of the aggravated battery of Muse before Bolden was shot and killed is nonmeritorious.  Where an issue not raised on direct appeal was not meritorious, defendant is not prejudiced from appellate counsel’s failure to raise the issue on direct appeal.  
People v. Harris
, 206 Ill. 2d 1, 15-16 (2002). 

We therefore conclude that even if appellate counsel had raised these issues on direct appeal, there is no reasonable probability that the result of the appeal would have been different.  
People v. Barrow
, 195 Ill. 2d 506, 523 (2001).  
The record substantively rebuts defendant’s argument that the State only proved involuntary manslaughter, and therefore, rebuts defendant’s argument that appellate counsel was ineffective for not arguing that the evidence was insufficient to prove first-degree murder.  The record substantively rebuts defendant’s challenge to the felony murder conviction and defendant’s argument that appellate counsel was ineffective for not challenging that conviction.  The defendant suffered no constitutional deprivation as the result of appellate counsel’s performance regarding these issues.  The record fails to satisfy the prejudice component under 
Strickland
. 
 Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct at 2068.

CONCLUSION

Regarding defendant’s post-conviction petition, we find the allegations of ineffective assistance of trial and appellate counsel based on defendant’s claim that the facts of his case supported a conviction for second-degree murder, that the State failed to prove defendant’s intent to kill, and that defendant’s sentence was excessive are positively rebutted by the record.  We note the trial judge addressed each allegation substantively on its merits, rather than relying on waiver or procedural default as a basis for dismissal.  See
 Etherly
, 344 Ill. App. 3d at 599.  The second-degree-murder argument and the argument that the State failed to prove defendant’s intent to kill implicate questions of evidence sufficiency raised in the context of ineffective assistance of counsel which, under the 
Strickland
 standard, are directly and positively rebutted by the record.
  Regarding whether this first-stage petition is frivolous or patently without merit, our examination of the record reflects the petition alleges constitutional deprivations each substantively rebutted by the record, rendering the petition frivolous and patently without merit.

This is not a case where the trial judge gave short shrift to the defendant’s
  pro se 
petition.  Rather, consistent with section 122-2 of the Act, the judge substantively addressed each and every allegation of the petition on its merits consistent with the mechanism provided by section 122-2.1(c) by which the circuit court at the first stage is to determine whether the petition is frivolous or patently without merit: “In considering a petition pursuant to this Section, the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.”  725 ILCS 5/122-2.1(c) (West 2000).  

Consistent with the determinations to be made by the circuit court at the first stage as provided by the Act, the circuit court judge in the instant case considered whether the petition alleged a constitutional deprivation which was substantively rebutted by the record, rendering the petition frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2), (c) (West 2000).  In the instant case, there was no reliance on waiver or other procedural default as the basis for first-stage dismissal by the circuit court judge.  The petition was reviewed substantively on its merits and dismissed because each alleged constitutional deprivation was positively rebutted by the record rendering the petition frivolous and patently without merit.  The written order entered by the experienced trial judge specifically articulated the way in which each and every allegation of the petition was substantively without merit and positively rebutted by the record. 

Regarding the allegations raised for the first time on appeal, we note that when a defendant raises new allegations on appeal, the trial judge, contrary to the intent of the Act, is precluded from determining whether the petition alleges a constitutional deprivation unrebutted by the record frustrating the very purpose of the Act.  725 ILCS 5/122-2.1(a)(2), (c) (West 2000).  We are mindful that a petitioner, as in the instant case, without representation at the first stage of the post-conviction process is disadvantaged in terms of identifying and pleading allegations which raise the “gist of a constitutional violation.”  See 
Edwards
, 197 Ill. 2d at 244.  As previously noted, however, a petitioner is not without recourse for failing to include issues in the petition but may raise the issue in a successive petition if he meets the “cause and prejudice test.”  
Jones
, slip op. at 6.  In the instant case, in the interest of judicial economy and because the issues have been fully briefed, we address the new issues raised for the first time on post-conviction appeal.  For the reasons previously discussed, the new allegations raised for the first time on post-conviction appeal are substantively without merit and positively rebutted by the record.

We affirm the dismissal of the first-stage post-conviction petition by the trial court.

Affirmed. 

GALLAGHER and FITZGERALD SMITH, JJ., concur.