2021 IL App (1st) 182243-U

No. 1-18-2243

Second Division
May 18, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|  | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | No. 16 CR 8708 |
| v. | ) | |
|  | ) | |
| MICHAEL SUGGS, | ) | Honorable |
|  | ) | William Raines |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in dismissing defendant's postconviction petition at the second stage of postconviction proceedings where he did not make a substantial showing of ineffective assistance of trial counsel. Defendant's request for remand based on postconviction counsel's errors is denied as the issue is moot.

¶ 2    Following a bench trial, defendant-appellant, Michael Suggs, was convicted of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and sentenced to nine years and six months in prison. He now appeals from the second-stage dismissal of his petition for

postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant requests that this court remand his petition for an evidentiary hearing, arguing that (1) he made a substantial showing that trial counsel was ineffective for failing to request a bench warrant for Javontae Edmond,[1] who was with defendant on the day he was arrested, and, (2) in the alternative, his postconviction counsel failed to appropriately amend defendant's *pro se* petition to adequately present defendant's claim. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant's conviction arose from events that transpired on May 20, 2016. Following his arrest, defendant was charged by indictment with four counts of UUWF and four counts of aggravated unlawful use of a weapon (AUUW).

¶ 5      At trial, Chicago police officer Dejuan Turner testified that on May 20, 2016, he was in his police vehicle covertly monitoring the funeral of a gang member, Lee McCollum. He then observed defendant, who he knew from previous interactions, along with Edmond, Darren Nelson, and an unidentified male, walk out of the church and toward a silver Pontiac Grand Prix. Edmond got into the back seat, defendant was in the front passenger's seat, and Nelson was in the driver's seat. Officer Turner testified that the vehicle was facing towards him from about 50 feet away, and he could see clearly through the vehicle's windshield.

¶ 6      Defendant rolled down the window and the unidentified male handed him a "dark object" through the open window. Officer Turner believed the object to be a handgun based on his past experience. As the Grand Prix drove past Officer Turner, he recorded the license plate number and

_____

[1]Edmond's first name is spelled "Javonte" in the briefs; however, it is spelled "Javontae" in his signed affidavit.

informed other officers of what he had seen. He then followed the Grand Prix in his own vehicle while a marked police vehicle followed directly behind the Grand Prix. The officers in the marked vehicle activated their lights and sirens, but the Grand Prix continued on, eventually stopping near 610 East 87th Street. Officer Turner later learned that a firearm was recovered from the vehicle. He testified that he recognized the firearm, a loaded Taurus handgun, as the same one he saw exchanged earlier.

¶ 7    Chicago police officer Henrietta Parker testified that on May 20, 2016, she was monitoring the funeral from her marked police vehicle. She heard a transmission on the radio to conduct a traffic stop on a silver vehicle leaving the area. She followed the silver vehicle, confirmed the license plate number over the radio, and then activated her sirens and lights, which in turn activated her vehicle's cameras. The silver vehicle accelerated and she could hear the sirens from other police vehicles. Eventually, the vehicle pulled over after Officer Parker cut in front of it and stopped, effectively blocking the path of the Grand Prix. She testified that about ten other police units arrived on the scene. She was not involved in the search of the vehicle and had no interaction with its occupants.

¶ 8    The State then played the video from Officer Parker's police vehicle. Officer Parker testified that the footage from her dashboard camera accurately depicted her pursuit of the Grand Prix.

¶ 9    Chicago police officer James Whigham testified that he was also monitoring the funeral on May 20, 2016. He was in an unmarked vehicle that day. A call came over the radio to conduct a traffic stop on a silver Pontiac Grand Prix in the area. He testified that the basis of the stop, according to the radio transmission, was because there was a firearm in the vehicle. He soon observed the Grand Prix and Officer Parker's marked vehicle following it with the emergency

lights and sirens activated. Officer Whigham and his partner also began following and activated their lights and sirens. He observed Officer Parker blocking the path of the Grand Prix, which came to a stop. He and other officers on the scene instructed the occupants to step out of the vehicle. Officer Whigham identified defendant as one of the three occupants, and he was seated in the front passenger's seat. The driver was Nelson and the other passenger in the backseat was Edmond. Officer Whigham learned from Officer Turner over the radio that the front passenger had received a handgun and he conducted a search. He recovered a loaded Taurus .40-caliber semiautomatic handgun from under the front passenger's seat. Defendant was then transported to the police station for processing.

¶ 10    Chicago police officer Thomas Ellerbeck, an evidence technician, testified that she received the recovered handgun and examined it for fingerprints. The results were negative for any fingerprint ridge impressions.

¶ 11    The parties stipulated that defendant had never been issued a firearm owner's identification card or a concealed carry license. The State rested, and the trial was continued until October 20, 2016.

¶ 12    On October 20, 2016, defense counsel stated his intention to call Edmond, who "may or may not implicate himself to the offense." Edmond was appointed a public defender, who later informed the court that Edmond intended to invoke his fifth amendment right against self-incrimination if he was called to testify that day. Counsel for Edmond further stated that if Edmond were permitted time to get "his personal affairs in order" he may "change his position." Edmond indicated to counsel that he was concerned about being arrested. The court admonished Edmond that he was under subpoena and allowed him until October 24, 2016, to get his affairs in order.

¶ 13    The defense recalled Officer Turner. He testified that on the night of the murder of McCollum, he spoke with defendant, who identified McCollum's body. Officer Turner stated that he had previously testified as to defendant receiving the firearm before a grand jury on June 3, 2016. There, he responded affirmatively when asked if he saw defendant "get into a silver Grand Prix after he received the handgun[.]" On cross-examination, Officer Turner clarified that he did not hear the State's Attorney use the word "after" when asked the question and that his testimony at trial was accurate.

¶ 14    Darrin Nelson testified that he was with defendant at McCollum's funeral on May 20, 2016. He left the funeral with defendant and Edmond. On their way to defendant's house, however, they were pulled over by the police. He noticed the police when one of the vehicles passed him and blocked his path. Police searched the vehicle and found a gun under the front passenger's seat. Nelson testified that he was unaware there was a gun in the vehicle. He was concerned with being charged with possession of the gun but was charged with fleeing and eluding police. On cross-examination, he denied that there was another man with them as they left the funeral. He denied ever seeing the gun that was recovered.

¶ 15    After Nelson testified, counsel for both parties spoke with the trial judge as to how the case would proceed. Counsel for defendant stated that on Monday, October 24, 2016, "we'll see what [Edmond] on his subpoena does[.] *** If he's not here, he's not here." He continued, "if Mr. Edmond decides not to show up and not honor the subpoena, I'm gonna go forward anyway."

¶ 16    On October 24, 2016, Edmond failed to appear. The court stated that "[Edmond] was of course directed to appear. My assumption is that since he has not appeared in effect he's exerting his 5th Amendment Rights."

¶ 17    The defense then called Chicago police sergeant Dennis O'Brien. He testified that he was also monitoring the funeral on May 20, 2016 and was involved in the stop of the Grand Prix, after receiving the radio transmission that there was a gun in the vehicle. He testified that Officer Whigham conducted a search of the Grand Prix, which revealed a firearm. He further testified that someone in the vehicle admitted to possession of the gun but then immediately retracted that admission. On cross-examination, Officer O'Brien stated that while at the scene, he learned that defendant was the one who had possession of the gun.

¶ 18    Defendant testified on his own behalf. He stated that he left the funeral with Edmond and Nelson in Nelson's vehicle. He denied having a conversation with anyone before getting into the vehicle and nobody handed him anything while he was in the vehicle. The vehicle was then pulled over by the police. He stated that he did not see the gun that was recovered and he was unaware that there was a gun in the vehicle. He did not remember slowing down and then speeding away from the police and he did not hear the sirens because the music was very loud.

¶ 19    The defense rested. In rebuttal, the State introduced certified copies of defendant's prior convictions for impeachment purposes.

¶ 20    The court found defendant guilty of all charges. Defense counsel did not file a motion for a new trial. At sentencing, the trial court merged the counts into count I and imposed a sentence of nine and a half years in prison.

¶ 21    On direct appeal, defendant argued that his trial counsel was ineffective for failing to object to Officer O'Brien's testimony as hearsay where he testified that he heard Officer Turner state on the radio that he saw defendant receive a handgun. We affirmed. *People v. Suggs*, 2020 IL App (1st) 171093-U.

¶ 22     On May 2, 2017, while his direct appeal was still pending in this court, defendant filed a *pro se* postconviction petition, claiming actual innocence. Specifically, defendant alleged that (1) law enforcement were retaliating against him for refusing to cooperate in another investigation; (2) his conviction was obtained through the knowing use of perjured testimony from Chicago police officers; (3) the court did not allow evidence to be presented at trial that would have proven his innocence; (4) the other occupants of the vehicle both told police that defendant was not the possessor of the gun; and (5) he was never proven guilty beyond a reasonable doubt. Defendant also provided his own affidavit, wherein he averred that he did not have any knowledge of the gun and that Edmond was the one who possessed the gun.

¶ 23     Also attached to the petition was an affidavit from Edmond, signed and notarized on June 10, 2016 (prior to the bench trial). In the affidavit, Edmond averred that he was a passenger in the car with defendant and he, not defendant, was in possession of the gun in question. He further averred that he told police multiple times that the recovered gun was his, not defendant's, and that defendant was unaware of his possession of the gun.[2]

¶ 24     The trial court appointed counsel and advanced the petition to second-stage proceedings. On May 27, 2018, the State filed a motion to dismiss the petition. The court heard arguments on the motion, and ultimately, granted the motion to dismiss.

¶ 25     This appeal followed.

¶ 26                                 II. ANALYSIS

¶ 27     On appeal, defendant requests that this court remand his petition for a third stage evidentiary hearing because he made a substantial showing that trial counsel was ineffective for

---

[2]There was no information in the record as to whether Edmond possessed a firearm owner's identification card.

failing to request a bench warrant for Javontae Edmond, who was with defendant on the day he was arrested. In the alternative, should this court find defendant's ineffective assistance claim inadequately presented, he seeks a remand to allow amendment of his petition as postconviction counsel failed to appropriately amend the *pro se* version to adequately present his claim.

¶ 28                                    A. Standard of Review

¶ 29    The Act provides a method for a defendant to collaterally attack a criminal conviction by asserting it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/1221 (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). However, "any issues considered by the court on direct appeal are barred by the doctrine of *res judicata*, and issues which could have been considered on direct appeal are deemed procedurally defaulted." *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). A postconviction proceeding in a noncapital case has three stages. *Hodges*, 234 Ill. 2d at 10. At the first stage, a trial court may summarily dismiss a postconviction petition within 90 days if it "determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). At the second stage, counsel can be retained or appointed, and defendant must show that his petition makes a substantial showing of a constitutional violation. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. During this stage, the State can participate and either answer the petition or move to dismiss. *Id.* At the third stage, the court holds an evidentiary hearing and determines whether the defendant is entitled to relief. *Id.*

¶ 30    At the second stage, as here, "[d]ismissal is warranted *** where the defendant's claims, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Turner*, 2012 IL App (2d) 100819, ¶ 21. During second-stage review, the court examines only "the legal sufficiency of the petition" and does not engage in "any fact-finding or credibility determinations." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL

113688, ¶ 35. We review the trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 31                              B. Ineffective Assistance of Trial Counsel

¶ 32    Defendant asserts that the trial court erred in dismissing his petition at the second stage because he made a substantial showing that his trial counsel was ineffective for failing to request a bench warrant for Javonte Edmond, whose expected testimony would have been exculpatory evidence at defendant's bench trial.

¶ 33    However, the State argues that defendant's *pro se* petition claimed actual innocence and did not claim ineffective assistance of trial counsel at any point, nor did postconviction counsel argue ineffective assistance of counsel before the trial court on the State's motion to dismiss. The State thus contends that we should not consider defendant's claim that trial counsel was ineffective and violated his right to compulsory process.

¶ 34    Pursuant to the Act, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). "[A]ny issue to be reviewed on appeal must be presented in the petition filed in the trial court." *People v. Johnson*, 352 Ill. App. 3d 442, 449 (2004). It is generally the case that claims not raised in the trial court may not be considered on appeal. *People v. Cathey*, 2012 IL 111746, ¶ 21. Our supreme court may relax the forfeiture rule by invoking its supervisory power, but this court "is not free *** to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition." *People v. Jones*, 213 Ill. 2d 498, 508 (2004); see also *People v. Jones*, 2017 IL App (1st) 123371, ¶ 60 (claim not considered where the defendant abandoned his claim of actual innocence and reformed it as a cause-and-prejudice theory on appeal); *People v. Hunter*, 376 Ill. App. 3d 639, 643 (2007) (where this court denied

review of a claim of ineffective assistance of counsel on appeal that was not alleged in the defendant's postconviction petition).

¶ 35    Here, as stated, defendant's petition did not couch any of his arguments in terms of ineffective assistance of counsel. He asserted actual innocence based on Edmond's pretrial affidavit. He was then appointed counsel, who argued before the trial court actual innocence based on the same affidavit, and the trial court specifically dismissed the claim because the affidavit was not new, as is a requirement for actual innocence claims based on newly discovered evidence. See *People v. Coleman*, 2013 IL 113307, ¶ 96 (To establish a claim of actual innocence, "the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial.").

¶ 36    Nonetheless, liberally construed, we believe that defendant's *pro se* petition may be read to present a claim of ineffective assistance of counsel. In his petition, defendant describes Edmond's pretrial affidavit and then states: "I will be submitting this affidavit under newly discovered evidence because my trial counsel lied to me and told me he had submitted it to the court, but facts of discovery proves that is not true." Thereafter, he cites to *Strickland v. Washington* in a parenthetical. It is reasonably clear from the record that although post-conviction counsel argued actual innocence, defendant took issue with his trial counsel's performance. Because defendant's claim of ineffective assistance of counsel rests on the same factual basis as his claim of actual innocence, namely Edmond's pretrial affidavit and the failure to issue a bench warrant for Edmond, we find that defendant has not forfeited this claim and we will consider it here. See *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48 ("[T]he pleading must bear some relationship to the issue raised on appeal.").

¶ 37    The State additionally argues that defendant's claim should be barred because it could have been raised on direct appeal. We disagree. A claim is better suited in a collateral proceeding "when the record is incomplete or inadequate for resolving the claim." *People v. Veach*, 2017 IL 120649, ¶ 46. Defendant's ineffective assistance of counsel claim as argued before this court, much like his actual innocence claim, is premised on Edmond's pretrial affidavit. *People v. Owens*, 129 Ill. 2d 303, 309 (1989); 2020 IL App (1st) 171024. Edmond's affidavit, though executed prior to defendant's trial, was not contained in the trial record, and he would not have been permitted to attach it to his direct appeal to this court. The affidavit was also not mentioned at trial according to the record. For that reason, we find that defendant's ineffective assistance of counsel claim is not procedurally barred. See *People v. Woods*, 2020 IL App (1st) 162751, ¶ 76.

¶ 38    Having found no impediment to our review, we turn to the merits of defendant's claim. Every criminal defendant has a constitutional right to the effective assistance of counsel under the sixth amendment of the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. For a claim of ineffective assistance of counsel, we follow the well-known standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by Illinois courts in *People v. Albanese*, 104 Ill. 2d 504 (1984). To establish ineffective assistance, the defendant must show both that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To show deficient performance, the defendant "must show that counsel's performance fell below an objective standard of reasonableness." *People v. Dupree*, 2018 IL 122307, ¶ 44. To establish prejudice, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance.

*Strickland*, 466 U.S. 668 at 690. It is defendant's burden to satisfy both prongs, thus courts may resolve ineffective assistance claims by deciding either prong. *People v. Boyd*, 347 Ill. App. 3d 321, 329 (2004).

¶ 39    "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The sixth amendment "guarantees a criminal defendant compulsory process for obtaining witnesses in his favor" but "does not grant him the right to secure the attendance and testimony of any and all witnesses." *People v. McLaurin*, 184 Ill. 2d 58, 89 (1998). "The right to call a witness is not absolute and it is not error for the trial court to prohibit calling a prospective witness *who has indicated that he will invoke his fifth amendment rights*." (Emphasis added.) *People v. Vera*, 277 Ill. App. 3d 130, 137 (1995). A witness may invoke the fifth amendment and "refuse to answer questions which might incriminate him, but only when he has reasonable cause to believe he might subject himself to prosecution if he answers." *People v. Edgeston*, 157 Ill. 2d 201, 220 (1993). "[I]t is improper for a party to call a witness whom it has reason to believe will invoke his fifth amendment privilege before the jury; therefore, a trial judge does not err when he precludes calling such a witness." *People v. Human*, 331 Ill. App. 3d 809, 819 (2002).

¶ 40    Edmond's pretrial affidavit establishes a strong likelihood of self-incrimination had he testified at defendant's trial. The affidavit suggests that Edmond would testify that the gun was his and not defendant's. During defendant's trial, the public defender appointed to represent Edmond informed the court that Edmond intended to invoke his fifth amendment rights. Although the public defender also suggested that Edmond might change his mind if given a few days to think about it, Edmond did not appear on the scheduled day. The court, noting Edmond's absence, stated that his failure to appear would be taken as an intention to invoke the fifth amendment.

¶ 41    Based on this record, it would have been inappropriate for defense counsel to request a bench warrant to be issued for Edmond. It also would have been futile because, given the court's observation, such a request likely would have been denied. See *Human*, 331 Ill. App. 3d at 819-20 (finding that the trial court did not err in barring a witness from testifying where the individual plainly stated that he would claim his fifth amendment privilege if called to testify). Moreover, even if a bench warrant were issued and Edmond was brought in to testify, the record suggests that he would have invoked the fifth amendment and the outcome of the trial would not have been different for that reason. Accordingly, counsel's failure to request a bench warrant was neither deficient nor was defendant prejudiced by such failure. Therefore, defendant has not made a substantial showing of a constitutional violation based on his claim of ineffective assistance of counsel.

¶ 42                              C. Postconviction Counsel Error

¶ 43    Defendant argues in the alternative that should this court find his ineffective assistance claim to have been inadequately presented, we should remand for further second-stage proceedings because his postconviction counsel failed to amend or tailor defendant's *pro se* postconviction petition into appropriate legal form and to adequately convey defendant's postconviction claim. As we have found defendant's ineffective assistance claim to be without merit and properly dismissed, we need not reach defendant's alternative argument.

¶ 44                              III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the circuit court.

¶ 46    Affirmed.